UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CRIMINAL CASE NUMBER: |
| v. | : | |
| | : | 3:10-cr-00128-RNC-8 |
| CHARLES HANDY, | : | |
| *Defendant.* | : | May 13, 2020 |

**MOTION FOR COMPASSIONATE RELEASE**

Charles Handy moves for compassionate release. In short, Mr. Handy has already exhausted his administrative remedies; his underlying medical conditions, including congestive heart failure, hypertension, and obesity, constitute "extraordinary and compelling reasons" for relief in light of the pandemic and rapid escalation of positive cases for coronavirus among staff and inmates at Wyatt; the granting of a less-than-ten-percent reduction to his term of imprisonment is consistent with the Section 3553(a) factors, especially given that the top of his Guidelines range (after granting a one-to-one variance) is now less than the time already that he has actually served in prison; and Mr. Handy, who until just recently resided in a halfway house, where he was gainfully employed and enrolled in school, will not present a danger to the community if immediately released. Assistant United States Attorney Marc Silverman does not oppose this request for release. In further support of his motion, Mr. Handy states as follows:

1.  In June 2010, the grand jury returned an indictment, charging Mr. Handy with the following two counts: (1) conspiracy to possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846; and (2) possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B). ECF No. 1 (Indictment). Mr. Handy was arrested the following day and ordered detained. ECF No. 70 (Order of Detention).

1

2. In February 2011, the grand jury returned a superseding indictment, charging Mr. Handy with the following three counts: (1) conspiracy to possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846; (2) possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B); and (3) possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).[1] ECF No. 442.

3. The government thereafter filed a notice pursuant to 21 U.S.C. § 851, asserting that the Mr. Handy's prior convictions for possession and sale under Connecticut state law increased his mandatory minimums.[2] ECF No. 458 (Information).

4. Mr. Handy was convicted of all three offenses in the superseding indictment following a jury trial, ECF No. 563 (Jury Verdict), and the case proceeded to sentencing, ECF No. 620 (Sentencing Scheduling Order). In preparation for sentencing, a presentence report (PSR) was prepared. ECF No. 796 (Final PSR). The PSR substantiates Mr. Handy's now-relevant medical conditions, those are, congestive heart failure, hypertension, and obesity. PSR ¶¶ 70–71. The PSR also calculated an advisory Guidelines range of 262 to 327 months' imprisonment, based on a Total

---

[1] Mr. Handy received the benefit of the Fair Sentencing Act of 2010, which increased the threshold quantities of crack cocaine required to establish mandatory minimums. ECF No. 812 (Gov't Mem.) at 6–10. In other words, while Mr. Handy was charged with, and convicted of, offenses under Sections (b)(1)(A) and (b)(1)(B), he was subject to the penalties outlined in Sections (b)(1)(B) and (b)(1)(C). Id.

[2] If Mr. Handy were sentenced today, the Section 851 notice would no longer be valid in light of recent decisions. See, e.g., United States v. Epps, 322 F. Supp. 3d 299, 303-07 (D. Conn. 2018) (addressing the issue under the Career Offender Guidelines). The Court, however, need not decide the validity of the Section 851 notice: Mr. Handy has already served more than ten years, accounting for good-conduct time, and a motion for compassionate release permits a reduction below the original mandatory minimum. See, e.g., United States v. Hansen, 2020 WL 1703672, at *10 (E.D.N.Y. Apr. 8, 2020) (granting compassionate release after defendant served roughly 10 years of his 20-year, mandatory-minimum sentence).

Offense Level of 34[3] and a Criminal History Category VI.[4] PSR ¶ 93. The PSR, however, noted that the elimination of the crack-powder disparity pursuant to a Kimbrough variance would result in a range of 120 to 150 months' imprisonment[5] and that the Court may wish to consider, inter alia, Mr. Handy's age and health conditions. PSR ¶¶ 105–06.

5. In November 2011, the Court sentenced Mr. Handy to 150 months' imprisonment on all three counts of conviction, to be served concurrently; eight years of supervised release on each count of conviction, to be served concurrently; and a $300 special assessment ($100 for each count of conviction). ECF No. 835 (Judgment). The written judgment reflects the following rationale for the imposition of sentence:

> The Court imposes a non-Guidelines sentence. The Guideline range of 262-327 months reflects the quantity of cocaine base for which the defendant is accountable as a member of the conspiracy in this case (more than 840 grams but less than 2.8 kilograms). If the defendant's offense conduct involved the same quantity of powder cocaine, rather than cocaine base, the range would be 120-150 months. A below-Guidelines sentence is necessary to mitigate this disparity. The Guideline range also reflects the defendant's extensive criminal record, which places him in criminal history category VI. The defendant's criminal record is serious but the sentence suggested by the Guideline range greatly exceeds the longest times he has served for prior offenses. In addition, his prior offenses, like his offense conduct in this case, are largely attributable to his own dependence on drugs and alcohol. For much of his adult life, the defendant has sold drugs to support his addictions. The defendant has participated in treatment on four occasions but his only periods of sobriety have been when he was incarcerated. The defendant's struggles with substance abuse are traceable to the

---

[3] The Total Offense Level was subsequently reduced courtesy of retroactive changes to the Guidelines. See Amendment 782. Mr. Handy would now receive 32 base offense levels, not 34. He was not eligible for a Section 3582(c)(2) motion because the Court imposed a sentence below the crack Guidelines.

[4] The PSR miscalculates Mr. Handy's criminal history. The PSR incorrectly added criminal history points to both the convictions identified in paragraphs 49 and 50 based on a probation violation imposed on the same day, which Application Note 11 to Section 4A1.2 prohibits. See PSR ¶¶ 49, 50. The probation violation brings only one of those conviction into the relevant time frame for scoring, not both convictions. This would result in three fewer criminal history points. The PSR also incorrectly awards criminal history points for a failure to appear conviction, which does not score under Section 4A1.2(c)(1). See PSR ¶ 53. If these four points are eliminated, Mr. Handy would have had twelve criminal history points and fell into Criminal History Category V.

[5] The application of retroactive changes to the Guidelines noted in footnote 3 would result in a variance to 24 offense levels, not 26. The resulting Guidelines range would be 100 to 125 months' imprisonment (CHC VI) or 92 to 115 months' imprisonment (CHC V).

circumstances of his youth. His parents separated when he was a young child, his father was essentially absent from his life, and he was raised in low-income areas known for violence and illegal activity. The defendant is now 44 years of age, he has a serious heart condition and he recognizes his need for treatment. He has demonstrated that he is capable of engaging in gainful employment and he has a supportive family available to assist him in recovery. Weighing all these factors, a Guidelines sentence is harsher than necessary to provide just punishment and adequate deterrence. A sentence of 150 months, followed by a lengthy term of supervised release, appears to be sufficient to serve these purposes while also reflecting the seriousness of the offense, avoiding unwarranted disparity in sentencing and providing the defendant with needed treatment in an effective manner.

Id.

6. Mr. Handy was confined in federal correctional institution(s) until October 2019.[6] While incarcerated, Mr. Handy completed the Residential Drug Treatment Program (RDAP), and on that basis, the BOP granted him a one-year reduction in his term of imprisonment. Moreover, according to the United States Probation Office, Mr. Handy did not receive a single disciplinary ticket while incarcerated in federal correctional facilities. In October 2019, Mr. Handy was granted leave by the BOP to spend the remainder of his sentence at Watkinson House. At the time, Mr. Handy anticipated being released from BOP custody on or about February 2020.

7. While at Watkinson House, Mr. Handy was employed at PetSmart and taking CDL classes at NETTS. In January 2020, Mr. Handy passed his permit test and was instructed by his course to complete his physical. According to NETTS,

> Charles Handy . . . is enrolled as a full[-]time student at NETTS New England Tractor Trailer Training School. Mr. Handy has been an outstanding student with perfect attendance until January 17, 2020 when he has not returned to school. In fact, Mr. Handy had to go to the Department of Motor Vehicles to obtain his permit which he did and also had a doctor's appointment which I was made aware of personally by him to me before his departure. A bizarre incident occurred in which the school was called to verify if he was in attendance. Whoever answered the phone gave him information which was not updated, that he was not present. Attendance is not inputted in real time and is usually updated the end of the day or the following morning. Mr. Handy was in school.

---

[6] Unless otherwise noted, the information in the above paragraph and the one that follows comes from documents provided to defense counsel by the government. A copy of these materials will be filed under seal upon request.

8.      Following his administrative hearing, Mr. Handy was remanded into custody based on a charge of failing to return to the halfway house within a four-hour period (a time when he was completing a physical to further his vocational training), and his one-year reduction for completing RDAP was rescinded. Mr. Handy is currently incarcerated at Wyatt Detention Center, and his anticipated release date is February 2021.

9.      As of last night, according to email forwarded to defense counsel from the Warden at Wyatt to the United States Marshal's Service, there are 8 confirmed cases of coronavirus among staff and 36 confirmed cases among detainees at Wyatt Detention Center.

10.     According to prison medical records, Mr. Handy, who is 53 years old, currently suffers from congestive heart failure, hypertension, obesity, and chronic knee issues, for which he receives steroids injections, which are immunosuppressants.[7] These conditions place him at a heighted risk of serious illness and even death as a result of the coronavirus. See Centers for Disease Control, Groups at Higher Risk for Severe Illness, available at

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html

11.     Yesterday, undersigned counsel wrote to Warden Martin requesting compassionate release on Mr. Handy's behalf. The email exchange goes as follows:

> Warden Martin:
>
> I represent Charles Handy, who is a BOP inmate currently incarcerated at Wyatt Detention Center. I am writing to request compassionate release on his behalf pursuant to Title 18 United States Code Section 3582. Mr. Handy currently suffers from: (1) congestive heart failure; (2) hypertension; (3) obesity (his BMI is roughly 40); and (4) chronic knee issues, for which he receives steroid injections, which are immunosuppressants. These serious medical conditions place him at a heightened risk of serious illness and even death due to the coronavirus, which Judge Chatigny did not consider at the time of Mr. Handy's sentencing many years ago. The need for Mr. Handy's release has become all the more urgent in light of the recent positive cases of coronavirus among inmates and staff at Wyatt. Mr. Handy is able to reside

---

[7] A copy of these medical records has been provided to the government and can be filed under seal upon request.

with his mother upon release. Mr. Handy, who has nearly completed his 150-month sentence, would not be a danger to the community if released immediately as opposed to February 9, 2021. Please let me know as soon as possible if you are able to rule on this request, and if so, whether it is your intention to grant or deny the request.

Please do not hesitate to contact me if you have any questions or concerns.

Ross Thomas
Assistant Federal Public Defender

---

Mr. Ross,

While I certainly understand and appreciate your request, unfortunately I do not have jurisdiction over granting any form of release to any prisoners. This request will need to be made to the court.

Thank You.

Warden Martin

(This email correspondence was forwarded to counsel for the government and can be filed with the Court upon request.)

12.     Today, undersigned counsel confirmed with BOP Senior Counsel Paul Irby that the BOP will not rule on Mr. Handy's request for compassionate release under these circumstances. Attorney Irby wrote to undersigned counsel:

> Good afternoon, Ross--
>
> Please be advised that the Federal Bureau of Prisons will not be able to consider your client for compassionate release since he is not presently in our custody. As such, it does not anticipate bringing a motion for such relief on his behalf.
>
> I trust this addresses your concerns.
>
> Paul

(This email correspondence was also forwarded to counsel for the government and can be filed with the Court upon request.)

13. A motion for compassionate release has four basic requirements: exhaustion, extraordinary and compelling reasons, consideration of the 3553(a) factors, and danger to the community. See 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13. Each requirement is satisfied in this case.

14. First, as explained above, the BOP will not file a motion for compassionate release when a person is confined in a private correctional institution. Under these circumstances, district court judges have deemed the exhaustion requirement satisfied. See, e.g., United States v. Jepsen, No. 19 CR 73 (VLB), 2020 WL 1640232, at *3 (D. Conn. Apr. 1, 2020) ("First, the Court finds that Mr. Jepsen's motion is properly before the Court pursuant to 18 U.S.C. § 3582(c)(1)(A) because he exhausted available appeals of the administrative denial of his request for compassionate release. Mr. Jepsen is essentially caught in a "Catch-22"; neither the warden at Wyatt nor the BOP will consider his request because of his designation to Wyatt, a non-BOP facility. Accordingly, the Court considers the merits of his motion."); United States v. Morales, No. 3:19-CR-00121 (KAD), 2020 WL 2097630, at *2 n.1 (D. Conn. May 1, 2020) (denying relief on dangerousness grounds but agreeing with Jepsen on exhaustion).

15. Second, a person suffering from multiple underlying conditions that increase the likelihood of serious illness or even death during a pandemic, in an institution where numerous inmates and staff have already tested positive constitutes an "extraordinary and compelling" reason for relief. It does so in two ways. First, these circumstances explicitly meet the Guidelines definition of "extraordinary and compelling reasons" because those circumstances "substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. §1B1.13; see, e.g., United States v. Colvin, No. 19 CR 179 (JBA), 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (granting compassionate release for diabetic with high blood pressure in light of the pandemic). Second, district courts have concluded that courts themselves can now determine which

7

circumstances are "compelling and exceptional" under the catchall provision of the Guidelines, see, e.g., United States v. Haynes, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *15 (E.D.N.Y. Apr. 22, 2020) (citing authority for the holding that a district court "has the authority to grant the relief sought in this case—namely, to determine what 'Other Reasons' (as that term is used in Application Note 1(D)) qualify as 'extraordinary and compelling' regardless of BOP's view on the matter and without having to await a someday-updating by the Commission of its unquestionably outdated policy statement"), and the totality of the circumstances here are certainly "extraordinary and compelling." United States v. McCarthy, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *4 n.4 (D. Conn. Apr. 8, 2020) (granting compassionate release under the catchall provision for prisoner with COPD).

16.  Immediate release is consistent with the Section 3553(a) factors. First, Mr. Handy's recalculated Guidelines range (applying CHC V; Amendment 782; and a one-to-one ratio) would be 92 to 115 months' imprisonment, and Mr. Handy has been incarcerated longer than 115 months' imprisonment. Second, the underlying pandemic, when combined with Mr. Handy's underlying health conditions, alter the original calculus about the need for the term of imprisonment to continue for nine additional months. Third, Mr. Handy's good conduct in prison, as well as his conduct while residing in the halfway house, suggests that the need for incapacitation has substantially diminished since the time of his original sentencing.

17.  Finally, Mr. Handy would not present a danger to the community. Despite being incarcerated for roughly a decade, Mr. Handy's only disciplinary incident involved arriving late to a halfway house for a valid reason, that is, getting a physical examination at a hospital, at the direction of his vocational training program. Moreover, with the exception of a conviction for second-degree simple assault from roughly thirty years ago, Mr. Handy's only prior convictions involved failures to appear and drug sales and possession. While his drug conduct is concerning, Mr. Handy has already served a very lengthy sentence and is far removed from the conduct that resulted in his incarceration.

Finally, Mr. Handy has demonstrated a commitment to do things differently this time around: he completed RDAP, remained discipline-free during his time spend in federal correctional institutions, was employed while residing in a halfway house, and was pursing educational opportunities in the halfway house. In light of these facts, Mr. Handy would not present a danger to the community if released.

18.     Undersigned counsel has discussed this case with counsel for the government, Assistant United States Attorney Marc Silverman. The government agrees that exhaustion has been satisfied and defers to the Court on the remaining questions. The government does not intend on filing a written response.

19.     Given the time-sensitive nature of the request and the government's position on the motion, undersigned counsel would waive a hearing on the motion and request expedited consideration of the motion on the papers.

Respectfully Submitted,

THE DEFENDANT,
Charles Handy

FEDERAL DEFENDER OFFICE

Date: May 13, 2020           /s Ross Thomas_____
                             Assistant Federal Defender
                             265 Church Street, Suite 702
                             New Haven, CT 06150
                             Phone: (203) 498-4200
                             Bar No.: phv08740
                             Email: ross_thomas@fd.org

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 13, 2020 a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s Ross Thomas
Ross Thomas